BAKER, JUDGE:
The claimant Lisa R. Eakle, seeks to establish liability on behalf of the respondent, Division of Highways, for damages arising from an automobile accident in Nicholas County. Ms. Eakle alleges that an ice covered area along Route 39 caused her to lose control of her vehicle whereupon her automobile slid and eventually struck a tree. She also alleges that the ice was a result of a clogged and damaged culvert which caused water to flow across Route 39.
Respondent contends that it did not have notice of any ice on Route 39 prior to claimant's accident. In fact, respondent asserts that it first received notice when two of its employees were driving to work, came upon the scene, and observed claimant's vehicle off the road. They proceeded to the Curtin Substation where they were assigned, and then had a truck dispatched to *3 the accident scene to treat the ice on Route 39.
The evidence adduced at the hearing on this claim on March 29, 1995, established that on January 3, 1990, at approximately 6:00 a.m., Ms. Eakle was traveling 30 miles per hour in the westbound lane of Route 39 across Fenwick Mountain. She was driving to Summersville and then she intended to continue to proceed to Smithers, Fayette County, where she was attending nursing school. Ms. Eakle was driving a Ford Bronco II registered to her ex-husband, Richard Eakle, and she was the only occupant of the vehicle. As she approached a slight curve in the road, Ms. Eakle unknowingly encountered an ice covered section of road. The vehicle immediately began to slide out of control, ms. Eakle attempted to regain control, but the vehicle spun around, rolled onto its passenger side door, and struck a tree. The vehicle slid approximately 475 feet. The ice covered area was located adjacent to a driveway along Route 39. Photographs of the scene of the accident indicate a culvert pipe was located under the driveway entrance. Ms. Eakle testified that it was cold at the time of the accident, and that there were patches of snow visible on the ground at various locations along Route 39. However, she did not observe any ice or snow on the road except for the one isolated ice covered area at the scene of the accident.
The record reflects that Ms. Eakle had recently divorced Richard Eakle, the owner of the Ford Bronco II. However, Ms. Eakle was entitled to possession of the vehicle until February 1, 1990. although the vehicle was insured, the policy in effect at the time of the accident did not cover any of Ms. Eakle's personal injuries.
Ms. Eakle's father, Dorsey Smith, went to the scene of the accident shortly after it occurred. When he arrived he discovered that the road had already been treated, but some ice and water were still visible on the pavement surface. He was of the opinion that water coming from a ditch where a culvert pipe crossed underneath a driveway to Route 39.
Mr. Smith testified that he worked for the respondent for eleven years and three months before retiring in November 1988. As part of his employment with the respondent, Ms. Smith served as a night watchman and dispatcher. During the winter months, he would answer road complaint calls at the Curtin Substation for the respondent. Mr. Smith recalled that he had received complaints about ice problems in the vicinity of the accident on several occasions while employed by the respondent. Although Mr. Smith is retired from his work with the respondent, he continues to receive road complaint calls at his home. Moreover, on the evening before the accident he received several complaints of ice on the road where the accident occurred. After receiving these calls, Mr. Smith testified that he attempted to telephone the dispatcher at the Curtin Substation, but received no answer.
There was evidence that the night watchman for the respondent at the Curtin Substation, Dwight Ralph Williams, was on duty from 11:00p.m. onJanuary 2, 1993, to7:00a.m. onJanuary 3, 1993, but that he was unaware of any calls during this shift, and was present at the station for the entire shift.
*4 The investigating officer, Wetzel Van Bennett, a Sergeant with the Nicholas County Sheriffs Department, arrived at the scene of the accident at 7:14 a.m. Upon arrival, he estimated the accident at 6:20 a.m. Officer Bennett also observed a very thin layer of ice near the scene of the accident. The icy area was approximately 50 feet long and covered the entire width of the road. Officer Bennett did not observe any water flowing onto the road, and attributed the ice to heavy dew and cold temperature conditions. While en route to the accident from the westerly side of the accident scene, Officer Bennett observed other similar ice covered areas along Route 39.
Respondent established through its witnesses that its first notice of ice on Route 39 was after claimant's accident when two of its Nicholas County employees, Raymond Tolley, a crew leader, and Flavie Boyce, an equipment operator, were proceeding to work at approximately 6:15 a.m. and passed the accident scene. They observed the ice covered area, and Mr. Tolley dispatched a crew to treat the area as soon as he arrived at work. In fact, Flavie Boyce was on e of the employees dispatched to the scene, and he drove the salt truck. Mr. Tolley testified that he has traveled on Route 39 over Fenwick Mountain for eighteen years and he has never observed any drainage problems in the area of claimant's accident. He had traveled through this same area on the evening prior to the accident and to the best of his recollection the road was clear and dry.
In West Virginia, the general rule is that the State is not an insurer of the safety of a traveler on its highways. Adkins v. Sims, 130 W.Va. 645, 46 S. E. 2nd 81 (1947). The respondent cannot be expected or required to keep its highways absolutely free of ice and snow at all times, and the presence of an isolated ice patch on a highway during winter months is normally insufficient to charge the respondent with negligence. McDonald v. Dept. of Highways, 13 Ct. Cl. (1979). Nevertheless, the respondent does owe a duty to travelers to exercise reasonable care and diligence in the maintenance of highways. Lewis v. Dept. of Highways, 16 Ct. Cl. 136 (1986). In order to establish liability on behalf of the respondent for a road defect of this type, a claimant must prove that the respondent had actual or constructive notice of the condition and a reasonable amount of time to take corrective action. Bartram v. Dept. of Highways, 15 Ct. Cl. 23 (1983).
In the instant claim, the record does not establish that the ice covered area was caused by a defective drainage culvert of which the respondent had notice. Although the evidence presented by the claimant established that there was an area of ice which covered a portion of Route 39, the evidence did not establish the existence of a defective drainage culvert and that this drainage culvert was the proximate cause of the claimant's accident, or that the respondent had notice of a drainage problem prior to the accident. Respondent's evidence, however, clearly established it did not have actual or constructive notice of a drainage problem or an icy condition at the time or at the location of the claimant’s accident. In addition, the evidence presented suggests that the ice was caused by natural weather conditions.
In accordance with the findings of fact and conclusions of law as stated herein above, it is the opinion of the Court that the respondent was not negligent in maintaining Route 39 at the time and location of claimant's accident. Therefore, this claim is denied.
*5 Claim disallowed.